IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| AMAZING GRACE BED & BREAKFAST, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CIVIL ACTION 09-0298-WS-N ) |
| MAYOR HENRIETTA BLACKMUN, et al., | ) ) ) |
| Defendants. | ) ) |

**ORDER**

This matter is before the Court on the defendants' motion to dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6), (Doc. 8), and alternative motion for more definite statement. (Doc. 9 at 5). The parties have filed briefs and other materials in support of their respective positions, (Docs. 9, 19, 23-25), and the motion is ripe for resolution.[1] After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion to dismiss is due to be granted in part and denied in part and that the motion for more definite statement is due to be granted.

**BACKGROUND**

The plaintiffs are an interracial couple and their business, Amazing Grace Bed and Breakfast. The defendants are the City of Camden ("the City"), the City of Camden Zoning Board ("the Board"), Mayor Henrietta Blackmun, and attorney Andrew Cromer.

The complaint alleges that the plaintiffs petitioned the City for a permit to operate

---

[1]The defendants' motion to supplement or clarify, (Doc. 25), which the plaintiffs have not opposed, is **granted**.
For reasons discussed infra at page 3 and note 3, the evidentiary materials submitted by the plaintiffs, (Docs. 20-21), cannot be considered on motion to dismiss.

a bed and breakfast out of their home.  The petition was heard by the Board, which denied a permit.  Blackmun did not vote on the proposal but sat at the head table and instructed the Board to deny the permit prior to hearing the evidence.  Cromer, as Board attorney, advised the Board that the meaning of "contiguous" is close or proximate rather than the plaintiff's proffered definition of adjoining.

> The complaint attempts to assert claims under the following provisions:
> - Title VII of the Fair Housing Act of 1968
> - Title II of the Civil Rights Act of 1964
> - Due Process Clause
> - Title II of the Americans with Disabilities Act ("ADA")
> - Rehabilitation Act of 1973
> - Title III of the ADA

(Doc. 1 at 1-6).

## DISCUSSION

In order to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must as a threshold matter provide "a short and plain statement of the claim showing that the pleader is entitled to relief" as required by Rule 8(a)(2).  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Though they need not be detailed, "[f]actual allegations must be enough to raise a right to relief above the speculative level ...."  *Id*.  Thus, neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" suffices to satisfy Rule 8(a)(2).  *Id*.  "Stated differently, the factual allegations in a complaint must 'posses enough heft' plausibly to suggest that the pleader is entitled to relief. ... Facts that are 'merely consistent with' the plaintiff's legal theory will not suffice when, 'without some further factual enhancement [they] stop short of the line between possibility and plausibility of "entitlement to relief."'"  *Weissman v. National Association of Securities Dealers, Inc*., 500 F.3d 1293, 1310 (11th Cir. 2007)

(quoting *Twombly*, 550 U.S. at 557).

If, but only if, "a claim has been stated adequately [under Rule 8(a)(2)], it may be supported by showing any set of facts consistent with the complaint." *Twombly*, 550 U.S. at 563 (explaining *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). That is, "[a] motion to dismiss [for failure to state a claim] may be granted only when a defendant demonstrates beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Kirwin v. Price Communications Corp.*, 391 F.3d 1323, 1325 (11th Cir. 2004) (internal quotes omitted). In making this assessment, "all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (internal quotes omitted).

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). The Court's review on this motion to dismiss is similarly limited to those arguments the parties have expressly advanced. Moreover, "a passing reference to an issue in a brief [is] insufficient to properly raise that issue," *Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 1331 n.4 (11th Cir. 2005), and the Court will not supply legal or analytical support the parties have declined to offer themselves.

**I. Amazing Grace.**

The defendants first argue that Amazing Grace is an artificial entity and thus not a proper pro se plaintiff. (Doc. 9 at 2-4; Doc. 23 at 2).

"It has been the law for the better part of two centuries ... that a corporation may appear in the federal courts only through licensed counsel." *Rowland v. California Men's Colony*, 506 U.S. 194, 201-02 (1993). "As the courts have recognized, the rationale for that rule applies equally to all artificial entities." *Id.* at 202. "This rule applies even when

the person seeking to represent the corporation is its president and major stockholder."
*Federal Trade Commission v. Gem Merchandising Corp.*, 1995 WL 623168 at *1 (11th Cir. 1995).

The complaint does not state whether Amazing Grace is an artificial entity for purposes of this rule. The defendants assume that it is, but the plaintiffs respond that it is only a "sole proprietorship." (Doc. 19 at 1). "A sole proprietorship may litigate pro se, [citations omitted], because it has no legal identity separate from the proprietor himself." *United States v. Hagerman*, 545 F.3d 579, 581 (7th Cir. 2008) (citing cases from the Second and Fourth Circuits); *accord Lowery v. Hoffman*, 188 F.R.D. 651, 653 (M.D. Ala. 1999) ("An individual owner may in general represent a sole proprietorship, for a sole proprietorship and its owner are essentially one and the same."). The defendants have not shown either that Amazing Grace is other than a sole proprietorship or that even a sole proprietorship cannot be represented by a layperson.

## II. Legislative Immunity.

"Local legislative bodies enjoy absolute immunity when exercising functions in the sphere of legitimate legislative activity." *Macuba v. Deboer*, 193 F.3d 1316, 1320 (11th Cir. 1999) (internal quotes omitted). The same applies to individual local legislators. *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). The defendants argue that Blackmun and Cromer are protected by this absolute legislative immunity. (Doc. 9 at 5-7; Doc. 23 at 3-4).

The defendants' reasoning is obscure and inadequate. They correctly note that the complaint does not accuse Blackmun or Cromer of voting on the plaintiffs' petition, and they affirmatively insist that Blackmun and Cromer did not vote. Moreover, they do not explain how a mayor (an executive)[2] or an attorney (an administrator or independent

---

[2] *See Hernandez v. City of Lafayette*, 643 F.2d 1188, 1193 (5th Cir. 1981) (a mayor is an executive officer, entitled to legislative immunity only when he acts in a legislative

contractor) could partake of immunity that is expressly legislative. Finally, they do not grapple with the analysis necessary for determining whether a particular action is to be considered legislative or administrative. *See, e.g., Dyas v. City of Fairhope*, 2009 WL 3151879 (S.D. Ala. 2009).

### III.  Due Process.

"[T]he state may cure a [procedural] due process violation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (en banc). Sufficient post-deprivation process includes judicial process, at least when the courts are empowered to hear the case, to cure violations of due process, and to compensate the plaintiff for any property loss. *Id*. at 1563-64.

The defendants argue that the plaintiffs have an adequate state judicial remedy. (Doc. 9 at 8-10; Doc. 23 at 5-6). State law provides the plaintiffs the right to appeal the Board's decision to state court. Ala. Code § 11-52-81. Indeed, it appears the plaintiffs have done so, although the appeal is languishing. (Docs. 24, 25). The question is whether the availability of this appeal satisfies *McKinney*.

Section 11-52-81 by its terms provides judicial power to review the Board's adverse decision. Because "the action in such court shall be tried de novo," *id*., it is clear the plaintiffs can obtain in court the due process they allegedly were denied by the Board. Less clear is whether the state court "could have fully compensated the [plaintiffs] for the property loss [they] suffered," measured "both in terms of damages and equitable relief." *McKinney*, 20 F.3d at 1564.

The defendants do not attempt to answer this question directly. Instead, they argue that the Eleventh Circuit has already held that Section 11-52-81 satisfies due process. In

---

capacity, as by vetoing an ordinance).

*O'Neal Homes, Inc. v. City of Orange Beach*, 333 Fed. Appx. 428 (11th Cir. 2009), the Court concluded that the plaintiff's failure to appeal, through Section 11-52-81, the revocation of building permits and issuance of stop work orders, precluded it from maintaining a procedural due process claim.  *Id.* at 430.  The Court did not address whether courts hearing appeals under Section11-52-81 can fully compensate plaintiffs for their property loss.  Indeed, the Court did not address the *McKinney* elements at all; instead, the Court cited generally to *Cotton v. Jackson*, 216 F.3d 1328, 1330-31 (11th Cir. 2000), a case that cited *McKinney* but omitted its requirement of a process providing compensation for the property loss.  Because *O'Neal Homes* is unpublished, it is not binding precedent but at most persuasive.  Eleventh Circuit Rule 36-2.  Because it lacks an explanation how it comports with *McKinney*, the Court does not consider *O'Neal Homes* sufficiently persuasive to alone carry the day.

**IV.  Fair Housing Act.**

The complaint alleges that the defendants violated 42 U.S.C. § 3604(a)-(d) by denying the plaintiffs a permit to open a bed and breakfast.  (Doc. 1 at 2).  By their terms, the conduct made unlawful by these provisions must concern "a dwelling."  The defendants argue that this case does not involve a dwelling for purposes of Section 3604. (Doc. 9 at 10-12; Doc. 23 at 6).

A dwelling, when used in connection with an existing structure, means "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families ...."  42 U.S.C. § 3602(b).  "The statutory definition of 'dwelling' turns on the meaning of the word 'residence.'"  *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1214 (11th Cir. 2008).  For purposes of the FHA, "the house, apartment, condominium or co-op that you live in is a 'residence,' but the hotel you stay in while vacationing at Disney World is not."  *Id.*  Critical to this distinction is whether the place is one "to which one intends to return" or is merely "a

place of temporary sojourn or transient visit." *Id.* (internal quotes omitted).

What the plaintiffs proposed was a bed and breakfast. An exhibit to the complaint confirms that they "would allow six people to stay for a maximum of three days at the three-bedroom house." (Doc. 1 at 53).[3] This is the archetype of a "transient visit." As a matter of law, the bed and breakfast is not a "dwelling." *See Schneider v. County of Will*, 190 F. Supp. 2d 1082, 1087 (N.D. Ill. 2002) (a bed and breakfast is not a "dwelling"); *Patel v. Holley House Motels*, 483 F. Supp. 374, 381 (S.D. Ala. 1979) (a hotel is not a "dwelling"); *Schwarz*, 544 F.3d at 1214 (citing *Schneider* and *Patel* as examples of lodgings that are not dwellings). The plaintiffs therefore can have no claim for violation of Section 3604.[4]

## V.  Civil Rights Act.

The complaint alleges that the defendants' action in denying the plaintiffs a permit to operate a bed and breakfast denied them, on account of race and other considerations, the full and equal enjoyment of their ability to rent rooms, in violation of 42 U.S.C. § 2000a. (Doc. 1 at 3-4). The necessary premise of the plaintiff's claim is that Title II extends not only to discrimination against customers in the use and enjoyment of existing places of public accommodation but also to discrimination against owners in granting permission to create a place of public accommodation. The defendants argue that Title II

---

[3]Because this document was attached to the complaint, it is "properly considered as part of the complaint." *Friedman v. Market Street Mortgage Corp.*, 520 F.3d 1289, 1295 n.6 (11th Cir. 2008); *accord Grossman v. Nationsbank, N.A.*, 225 F.3d at 1231. As noted above, "all facts set forth in the plaintiff's complaint are to be accepted as true." *Id.* Indeed, even were there a conflict (which there is not) between the exhibit and the allegations of the complaint, "it is well settled that the exhibits control." *Friedman*, 520 F.3d at 1295 n.6 (internal quotes omitted). Thus, the Court must accept as true that guests at the bed and breakfast would stay no more than three days.

[4]The plaintiffs' home was of course a dwelling as to them, but they do not allege any violation of Section 3604 concerning use of the home as their own dwelling.

does not stretch so far.  (Doc. 9 at 12-14; Doc. 23 at 6-8).

Title II provides in pertinent part as follow:

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

42 U.S.C. § 2000a(a).  The statutory language indicates that no violation can occur before a place of public accommodation exists, since it prohibits discrimination only in the enjoyment of such places, which would seem to presuppose their existence.  Similarly, the language employed suggests that the only proper plaintiffs are those thwarted in using the accommodations rather than those thwarted in creating them, since it is the enjoyment of their attractions that cannot be discriminatorily denied, not the enjoyment of their ownership.  The plaintiffs have offered no explanation how the statutory language could bear the construction they would place on it.

Beyond the express terms of the statute, there is its "overriding purpose," which the Supreme Court has identified as "to remove the daily affront and humiliation involved in discriminatory denials of access to facilities ostensibly open to the general public." *Daniel v. Paul*, 395 U.S. 298, 307 (1969) (internal quotes omitted).  This language points unmistakably to the protection of a public accommodation's would-be users in their "access" to places that are "open," not to the protection of its would-be creators before the public accommodation exists.  The defendants pointed out this congressional purpose, and the plaintiffs ignored it.

Finally, neither the plaintiffs, the defendants, nor the Court have located a single case approving a suit under Section 2000a by a citizen against governmental actors based on their failure to approve the creation of a place of public accommodation, nor any case suggesting that such an action would be authorized by Title II.

This analysis does not purport to be exhaustive.  Based on the limited argument and authority presented, the Court concludes that the plaintiffs cannot maintain an action

under Section 2000a.

## VI.  More Definite Statement.

The balance of the complaint is a jumble of allegations to no clear purpose, though it appears from citations therein that the plaintiffs are attempting to raise claims under Titles II and III of the ADA as well as under the Rehabilitation Act.  The defendants request the Court to order the plaintiffs to file a more definite statement.  (Doc. 9 at 5; Doc. 23 at 3).

"A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  The complaint easily satisfies this standard.

All actions filed in federal court are subject to Federal Rules of Civil Procedure 8(a), 8(d), and 10(b). Rule 8(a) requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8(d) requires that "[e]ach allegation must be simple, concise, and direct."  Rule 10(b) requires that a plaintiff "must state its claims ... in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  The plaintiffs' dense, rambling complaint, punctuated with inconsistent (and occasionally absent) paragraph numbering or even indentation, fails these requirements.  The problem is exacerbated by over 50 pages of exhibits to the complaint (some of them redundant), which make clear the plaintiffs' annoyance but do little to illuminate the complaint.

The Court recognizes that the plaintiffs are proceeding without outside counsel. However, the exhibits to the complaint confirm that plaintiff Linda Mendenhall is a lawyer.  (Doc. 1 at 50).  Thus, the plaintiffs appear unentitled to the rule that "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."  *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir.

2003) (internal quotes omitted). At any rate, "even in the case of pro se litigants this leniency does not give a court license to serve as de facto counsel for a party, [citation omitted], or to rewrite an otherwise deficient pleading in order to sustain an action ...." *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998).

## CONCLUSION

For the reasons set forth above, the defendants' motion to dismiss the plaintiff's claims under Section 3604 of the Fair Housing Act of 1968 and under Title II of the Civil Rights Act of 1964 is **granted**. Those claims are **dismissed**. In all other respects, the motion to dismiss is **denied**. The motion for more definite statement is **granted**. The plaintiffs are **ordered** to file and serve an amended complaint on or before **December 14, 2009**, failing which the Court "may strike the [complaint]" as provided in Rule 12(e).[5]

DONE and ORDERED this 30th day of November, 2009.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[5] Before repleading, the plaintiffs would do well to consider the points made in the defendants' filings concerning ADA and Rehabilitation Act claims in particular and the plaintiffs' pleading in general, including the requirements of *Twombly*. (Doc. 9 at 4-5, 7, 14-18; Doc. 23 at 8-10). The Court does not warrant that doing so will insulate the amended complaint from dismissal. The plaintiffs are also cautioned to follow the format requirements of Local Rule 5.1(a).