# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| AMAZING GRACE BED & BREAKFAST, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CIVIL ACTION 09-0298-WS-N ) |
| MAYOR HENRIETTA BLACKMUN, et al., | ) ) ) ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the defendants' motion for summary judgment. (Doc. 79). The parties have submitted briefs and evidentiary materials in support of their respective positions, (Docs. 80-82, 100-01, 103, 107), and the motion is ripe for resolution. After carefully considering the foregoing, the Court concludes that the motion for summary judgment is due to be granted in part and that resolution of the balance of the motion requires additional briefing.

## BACKGROUND

The plaintiffs are an interracial couple (Stanford and Linda Mendenhall) and Amazing Grace Bed & Breakfast. The defendants are the City of Camden ("the City"), the City of Camden Adjustment Board ("the Board"), Mayor Henrietta Blackmon,[1] and attorney Andrew Cromer.

---

[1] The defendants, who presumably know, utilize this spelling of the mayor's name, and the Court does so as well.

[1]

The plaintiffs sought a permit to operate a bed and breakfast out of a house in Camden, which was denied by the Board. The first amended complaint, (Doc. 34), alleges that the defendants improperly denied the permit, and improperly interfered with the Mendenhalls' appeal of that denial, because Stanford is black and Linda is white. The causes of action that have not been previously dismissed are advanced under 42 U.S.C. §§ 1981, 1982 and 1983 (Equal Protection Clause) and the Declaratory Judgments Act (Counts One, Two, Three and Five, respectively). (Doc. 50).

The defendants argue that the action is due to be dismissed in its entirety because the plaintiffs cannot create a genuine issue of fact as to whether the denial of the permit was the product of race discrimination and cannot create a genuine issue of fact as to whether the alleged conduct interfered with their appeal of that decision. They also argue that the action is due to be dismissed in its entirety because Linda and Stanford lack standing to proceed. Finally, the defendants argue that Blackmon and Cromer should be dismissed because they had nothing to do with the decision to deny a permit and had no effect on the plaintiffs' ability to appeal. (Doc. 79 at 2).

## DISCUSSION

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and 1367(a). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

Summary judgment should be granted only if "there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). "If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made. [citation omitted] If, however, the movant carries the

initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993). "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant ...." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). However, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion ...." Fed. R. Civ. P. 56(e)(2).

The parties have submitted a number of exhibits, some of which they have not referenced in their briefs or have referenced only in part. There is no burden on the Court to identify unreferenced evidence supporting a party's position.[2] Accordingly, the Court limits its review to the exhibits, and the specific portions of the exhibits, which the parties have expressly cited.[3]

Likewise, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

---

[2] Fed. R. Civ. P. 56(c)(1) (a party "must ... cit[e] to particular parts of materials in the record"); *id*. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *accord Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so."); *see also* Local Rule 7.2.

[3] The plaintiffs failed to cite several of their lettered exhibits. They also did not cite the Mendenhalls' 55-page affidavits and the exhibits thereto, (Doc. 100, Attachments), which consequently are not considered.

Accordingly, the Court limits its review to those legal arguments the parties have expressly advanced.

**I. Standing.**

The defendants argue the plaintiffs have no standing to pursue this action. (Doc. 80 at 37-38). With respect to Stanford, they point to a second home rider on his mortgage, which provides that the borrower "shall only use the Property as Borrower's second home." (Doc. 82, Exhibit W). Stanford responds that the mortgage has been satisfied and that the current mortgage has no such restriction, (Doc. 103 at 2), but the document he uses to evidence this does not do so. (Doc. 101, Exhibit J). The problem for the defendants is that, beyond listing the usual requirements for standing, they have done nothing to establish that the existence of such a provision eliminates standing. Whether or not the rider has been removed, it presumably could be, either by going to another mortgagee or by paying a higher premium, and the Court cannot simply assume on behalf of the defendants that such an easily removed impediment precludes standing as a matter of law.

As to Linda, the defendants assume that her lack of a property interest in the house automatically eliminates standing. Again, they offer no evidence, argument or authority for this questionable proposition. Without it, the Court cannot assume that Linda has not invested in remodeling, refurnishing and other expenses necessary to start a B&B[4] or that such an investment is inadequate to establish standing.

**II. Intentional Discrimination.**

"We conclude, therefore, that § 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination." *General Building Contractors Association*

---

[4] Linda says she has done so, (Doc. 103 at 2), but she cites no evidence of it.

*v. Pennsylvania*, 458 U.S. 375, 391 (1982). Neither the Supreme Court nor the Eleventh Circuit appears clearly to have held that Section 1982 likewise reaches only intentional discrimination.[5] However, other appellate courts have routinely done so.[6] As the plaintiffs do not argue to the contrary, the Court applies that rule in this case.

The plaintiff must first establish a prima facie case of discrimination. *Jiminez v. Wellstar Health System*, 596 F.3d 1304, 1308 (11th Cir. 2010) (Section 1981). The bar is low, *see id*., and the defendants do not suggest that the plaintiffs have failed to clear it. "Once the prima facie case establishes the presumption of intentional race discrimination, the defendant may rebut the presumption by articulating a legitimate, non-discriminatory reason for its decision." *Howard v. BP Oil Co*., 32 F.3d 520, 524 (11th Cir. 1994) (Section 1981). "The defendant's burden, like Plaintiff's prima facie burden, is easily fulfilled," *id*., and the defendant need not prove that its articulated reason is the true reason for its action. Instead, the plaintiff must "demonstrate through presentation of his own case and through cross examination of the defendant's witnesses, that the proffered

---

[5] *See Terry Properties, Inc. v. Standard Oil Co*., 799 F.2d 1523, 1534 (11th Cir. 1986) (finding no binding authority and resolving the Section 1982 claim on other grounds); *see also Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617 (1987) (before reaching the issue of whether Jews may state claims under Section 1982, remarking in passing that "a charge of racial discrimination within the meaning of § 1982 cannot be made out by alleging only that the defendants were motivated by racial animus; it is necessary as well to allege that the defendants' animus was directed towards the kind of group that Congress intended to protect when it passed the statute.").

The defendants rely on *Jackson v. Okaloosa County*, 21 F.3d 1531 (11th Cir. 1994). The *Jackson* Court noted that other courts have required an allegation of intentional discrimination in Section 1982 actions (incorrectly including *Terry Properties* in its listing). The Court did not hold that intentional discrimination is required under Section 1982; instead, it ruled that the complaint in fact alleged intentional discrimination and therefore satisfied any such requirement. *Id*. at 1543.

[6] *E.g., Bloch v. Frischholz*, 587 F.3d 771, 775 n.5 (7th Cir. 2009); *Daniels v. Dillard's, Inc*., 373 F.3d 885, 887 (8th Cir. 2004); *Juarez v. ACS Government Solutions Group, Inc*., 314 F.3d 1243, 1245 (10th Cir. 2003); *Brown v. Phillip Morris, Inc*., 250 F.3d 789, 797 (3rd Cir. 2001); *Rivera v. United States*, 928 F.2d 592, 608 (2nd Cir. 1991).

reason was not the true reason for the … decision and that race was." *Id*. at 525 (internal quotes omitted). In order "to withstand summary judgment, a plaintiff need only demonstrate that a genuine question exists as to whether the reason for the decision was intentional discrimination." *Id*.

It is uncontroverted that the City's zoning ordinance precludes a permit to operate a B&B in a residential area unless the Board makes a case-specific exception. The defendants present evidence from several Board members to the effect that the Board denied the exception, and thus the permit, due to concerns over neighborhood safety, traffic, and having a business in a residential area. These are legitimate, non-discriminatory reasons supported by record evidence, and the burden thus shifts to the plaintiffs to show that a genuine issue of fact remains as to whether the Board's articulated reasons are a pretext for unlawful discrimination.

"The inquiry into pretext requires the court to determine, in view of all the evidence, whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct" but "were a pretext for discrimination." *Crawford v. Carroll*, 529 F.3d 561, 976 (11th Cir. 2008) (internal quotes omitted). "In order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that *each* of the employer's proffered nondiscriminatory reasons is pretextual." *Chapman v. AI Transport*, 229 F.3d 1012, 1037 (11th Cir. 2000) (en banc) (emphasis added). The plaintiff's burden is to "demonstrate weaknesses or implausibilities in the proffered legitimate reason so as to permit a rational jury to conclude that the explanation given was not the real reason, or that the reason stated was insufficient to warrant the adverse action." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1279 (11th Cir. 2008). Of course, "a reason is not pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Springer,* 509 F.3d at 1349 (emphasis in original) (internal quotes omitted). To make this showing, the plaintiff may resort to "all

the evidence," *Crawford*, 529 F.3d at 976, including "the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom." *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 143 (2000). The plaintiffs' presentation fails to raise a genuine issue as to whether the denial of the permit was based on race/interracial marriage.

The plaintiffs first argue that a board member has "admitt[ed]" the denial was based on race. (Doc. 103 at 8, 10). This is based on testimony that Perryman, a black Board member, told Rev. Stromas after the permit was denied, "You know these white people in this town. They will not let the Mendenhalls open up anything in this town." (Doc. 101, Exhibit O). The defendants properly object to this evidence as inadmissible hearsay, (Doc. 108 at 11), and the plaintiffs offer no argument to the contrary. Moreover, Perryman referred to white people "in this town," not "on this board." It is uncontroverted that numerous white neighbors spoke in opposition to the permit, and Perryman obviously spoke of them, not of his fellow Board members. Even had Perryman been speaking of the white members of the Board, he was voicing only his subjective opinion as to their motives; he did not claim any personal knowledge of those motives. *See, e.g., Cooper v. Southern Co*., 390 F.3d 695, 743 (11th Cir. 2004) ("[A] plaintiff's opinion, without more, is not enough to establish a prima facie case.") (internal quotes omitted). Finally, Perryman's comment could implicate at most only two of the five Board members, and the votes of the three black members were enough to require denial of the permit.

The plaintiffs suggest that Perryman as well acted from racial motivation. (Doc. 103 at 8). In support of this contention, they cite to evidence that, at the hearing, Perryman told the Mendenhalls to "liquidate their asset and get out." (Doc. 101, Exhibits D, O). This statement is not facially racial, and the context in which it was made renders it obvious that it was not so intended. It is uncontroverted that the Mendenhalls advised the Board they did not live in Camden (Linda works in Huntsville) and would not live in the B&B were it approved. It is also uncontroverted that the house was zoned residential

and could be used for no other purpose without an exception to the zoning ordinance being made. It is also uncontroverted that numerous neighbors vocally opposed making such an exception, and that the permit was denied. Under such circumstances, selling the house (which they would not live in and which could not be used as a B&B) represented the most, and perhaps only, reasonable course, and offering such advice is scarcely evidence of racial animus by a black Board member against a black applicant.

The plaintiffs next argue that a former planning commissioner has testified that the Mendenhalls' racially mixed marriage played a part in the process. (Doc. 103 at 9). James Scott testified that either the marriage or Stanford's veteran status would have factored in to the Board's decision. (Doc. 101, Exhibit GG). As the plaintiffs themselves admit, Scott's testimony is based on "information and belief," not personal knowledge; Scott explicitly testified he did not know why the permit was denied. As the plaintiffs also admit, Scott was not in office at the time the permit decision was made, and they present no evidence that Scott had any access to the Board members or the decision-making process. Moreover, Scott affirmatively admitted that the only basis for his belief is that the denial of an exception is rare, not that no legitimate reasons existed for denying the exception; indeed, Scott acknowledged that the location of the proposed B&B would be a legitimate reason to deny the permit.[7] Finally, because the question posed to him was phrased in the disjunctive, his response does not specify that he believes race, as opposed to veteran status, played a role. For all these reasons, Scott's testimony furnishes no evidence of racial motivation.

Next, the plaintiffs argue that other businesses operate in residential areas. (Doc. 103 at 11-12; Doc. 101 at 3, 18-19). The fundamental problem here is that the plaintiffs identify no evidence that those who operate these businesses are not black and are not partners in an interracial relationship. Likewise, there is no evidence that those who

---

[7] Since Scott can recall only one time an exception has ever been granted, and that only dimly, it is not clear how he could consider denial of an exception a rarity.

operate these businesses sought and received a permit from the Board. There is thus no evidence that the defendants treated anyone without the Mendenhalls' characteristics more favorably.

But there are other fatal deficiencies in this argument as well. The plaintiffs assert that there is a boarding house on Caldwell and that there used to be one on Clifton, but they identify no evidence to support these propositions.[8] They assert there is a warehouse on Earl, and the submitted photograph could arguably represent a warehouse, but the plaintiffs identify no evidence that it is located in a residential area. Nor do they identify any evidence that the warehouse was not grandfathered in and does not otherwise fall outside the zoning ordinance's general restriction on businesses in residential areas.[9] They assert that one resident operates a one-chair beauty parlor out of an accessory building at her home, but the zoning ordinance expressly allows such businesses within residential areas.[10]

The plaintiffs argue the Board and the neighbors could not truly have been concerned about transients, since the boarding houses have them. (Doc. 103 at 12). Since, as noted in text, the plaintiffs have no evidence there was a boarding house in a residential area, their argument fails. They also argue that racism is shown because only white neighbors complained about a B&B, but they identify no evidence that this is so. Moreover, it was not the neighbors who voted to deny the permit but the Board.

---

[8] Merely submitting a non-descript photograph of each property, with someone's handwritten description, does not suffice.

[9] There is evidence that other businesses have been grandfathered in. (Doc. 101, Exhibit V at 88).

[10] The defendants suggest the lack of proper comparator evidence is automatically fatal to the plaintiffs' case. (Doc. 80 at 28-31). The Court finds the argument inadequately supported to adopt. The absence of such evidence, however, does make the plaintiffs' burden that much more difficult to meet.

The plaintiffs next argue that the defendants violated normal procedures for dealing with requests for an exemption. (Doc. 103 at 7). "Standing alone, deviation from a company policy does not demonstrate discriminatory animus." *Mitchell v. USBI Co.*, 186 F.3d 1352, 1355-56 (11th Cir. 1999). "To establish pretext, a plaintiff must show that the deviation from the policy occurred in a discriminatory manner." *Rojas v. Florida*, 285 F.3d 1339, 1344 n.4 (11th Cir. 2002). Thus, "*inconsistent* application of employment policies [may be] circumstantial evidence of discrimination." *Berg v. Florida Department of Labor and Employment Security*, 163 F.3d 1251, 1255 (11th Cir. 1998) (emphasis added).

While the plaintiffs say that normal procedures were violated "at every turn," the only one they identify in brief is the failure to provide them a statement of reasons for denying the permit. (*Id*. at 7-8). The denial letter sent to the Mendenhalls is in the record, and it does not include a statement of reasons. (Doc. 101, Exhibit K). However, the plaintiffs identify no evidence that the Board's normal procedure was to include a statement of reasons for a denial. They mention the petition of Reverend Stromas, (Doc. 103 at 8), but they do not cite to any record evidence of his experience. Even had they done so, anecdotal evidence of one citizen's experience does not remotely reflect a "normal procedure." In a universe of two denials, one with a statement of reasons and one without, it is pure speculation which constitutes the norm. The Board's failure to provide a statement of reasons for denying the permit is not evidence of race discrimination.

The plaintiffs' opposition to the defendants' proposed determinations of uncontroverted fact indicates their belief that the Board acted improperly in conducting a hearing before the planning commission had done so. (Doc. 101 at 2, 8). The evidence on which they rely does not support the proposition that a hearing before the planning commission must precede a hearing before the Board. At most, the evidence indicates that citizens typically approach the Board when the planning commission is unable to make a decision or makes an unfavorable decision. It is uncontroverted that the planning

[10]

commission has no authority to grant permission to open a B&B in a residential area and that the planning commission directed the Mendenhalls to the Board to obtain relief. Nor have the plaintiffs identified any evidence that others have not been treated similarly. This argument is meritless and in no wise suggests race discrimination.

As an apparent alternative argument, the plaintiffs insist that the April 14 hearing they attended was before the planning commission rather than before the Board and that the Board therefore voted on April 28 having never conducted a hearing. (Doc. 103 at 12). The evidence they cite in support of this proposition does not do so. On the contrary, the minutes of the March 31 Board meeting (which the plaintiffs admit they missed through no fault of the defendants) expressly provide that the Board would reconvene on April 14 to consider the Mendenhall application. (Doc. 101, Exhibit V at 86). The minutes of the April 14 meeting also reflect that it was a meeting of the Board, not of the planning commission. (*Id*. at 87). The evidence is uncontroverted that members of the planning commission attended the Board meeting, as they frequently do, only to be available to answer questions and otherwise assist the Board. Again the plaintiffs identify no evidence that others have not been treated similarly. These circumstances do not in the slightest suggest race discrimination.

The plaintiffs next point to evidence that they were not allowed to stand together during their presentation and were denied use of the Board table to place their documents. (Doc. 103 at 9). They speculate that these restrictions were placed on them because of their race and interracial marriage, but they identify no evidence that others appearing before the Board are allowed to speak jointly or are provided table space. Without such evidence, these facially benign circumstances do not support an inference of race discrimination.

The plaintiffs point to evidence that, when they turned in their application, the chair of the planning commission told them they should not have any problem getting an exception for a B&B. (Doc. 103 at 11). It is uncontroverted that the chair of the planning commission does not sit on the Board, and it is uncontroverted that exceptions

are not automatic but must be approved by the Board. It is further uncontroverted that the Board has never granted an exception for a B&B; indeed, it is uncontroverted that no more than one exception for any kind of business in a residential area has ever been made. Any such statement by the chair of the planning commission was made in ignorance, without authority, and contrary to actual history. It does not in any way suggest that the Board denied the Mendenhall application based on race.

The plaintiffs launch a broadside against defendant Blackmon. They assert that she instructed the clerk not to issue a permit when the application was first presented; that she presided over the April 14 meeting; that she taped the meeting; that she denied the permit; and that she drafted the denial letter. (Doc. 103 at 3-4, 9, 12, 14). The plaintiffs identify no evidence that Blackmon presided over the meeting, that she denied the permit, or that she drafted the denial letter; this is all merely the plaintiffs' speculation. The uncontroverted evidence is that Gavin, the Board's chair, presided over the April 14 meeting; that the Board denied the permit; and that Gavin signed the denial letter. By the plaintiffs' own evidence, Blackmon did not instruct the clerk not to issue a permit (which only the Board could approve); instead, when the plaintiffs turned in their application, the clerk called the mayor to get a sense of how likely it was to be approved, and Blackmon responded that she needed to hear how her constituents felt about the proposed B&B. (Doc. 101, Exhibit M at 68). There is evidence the April 14 meeting was taped, but the plaintiffs cannot explain how this translates into evidence of race discrimination. None of the plaintiffs' arguments concerning the mayor suggests that the Board denied the permit based on race.

Finally, the plaintiffs insist that racial discrimination "is alive in Camden as evident in the segregated marriage licenses presently in the City Clerk's office." (Doc. 103 at 9). The plaintiffs invite the Court to wade through a lengthy article to find support for this proposition but, as noted previously, the responsibility lies with the plaintiffs to direct the Court to evidence, not with the Court to search for something to aid their case. The defendants, who do cite specific evidence, show from Linda's own testimony that the

practice ended in 1991. (Doc. 82, Exhibit A at 184). At any rate, segregated marriage licenses presumably maintained by the probate court are not evidence that the Board – which has not been shown to be related to the probate court – denied the Mendenhalls' petition based on racial considerations.

In sum, the defendants have articulated legitimate, non-discriminatory reasons for the decision to deny the permit, and the plaintiffs have failed to show the existence of a genuine issue as to whether these articulated reasons are a pretext for unlawful discrimination based on race/interracial marriage. Accordingly, the defendants are entitled to summary judgment with respect to the plaintiffs' claims under Sections 1981, 1982 and 1983 for discriminatory denial of a permit.

### III. Interference with Appeal.

Count Three of the amended complaint alleges that the defendants deprived the plaintiffs of the right to appeal the permit denial, based on the Mendenhalls' interracial marriage, in violation of the Equal Protection Clause. (*Id*. at 9).[11] The defendants argue that "there was no post-vote activity that related to Plaintiffs' decision or ability to appeal the Board's decision in state court." (Doc. 80 at 32).

"Any party aggrieved by any final judgment or decision of such board of zoning adjustment may within 15 days thereafter appeal therefrom to the circuit court …." Ala. Code § 11-52-81. The plaintiffs appealed the permit denial, but the state judge dismissed the action because they "failed to file a timely Appeal pursuant to Sec. 11-52-81." (Doc. 82, Exhibit Y). Because timeliness was the dispositive issue on appeal, the plaintiffs can have no viable claim based on interference with their appeal unless the defendants interfered with their ability to file a timely appeal.

---

[11] The Section 1981 and Section 1982 counts are explicitly limited to the denial of the permit and do not extend to interference with the plaintiffs' appeal. (Doc. 34 at 8).

It is uncontroverted that an appealable decision to deny the permit was made on April 28. The plaintiffs admit they knew on April 28, from their attendance at that meeting, that their permit had been denied. (Doc. 82, Exhibit A at 83; *id*., Exhibit B at 84). They do not allege that the defendants later told them there had been no appealable decision or that the defendants somehow tricked them into believing they had more time to appeal. Instead, the plaintiffs argue they did not receive timely written notice of the decision, which somehow "impact[ed] the[ir] ability to appeal the decision." (Doc. 83 at 7). Nothing in state law, however, hinges the ability to appeal on the receipt of a written notice of decision. Once the plaintiffs had oral notice of the decision, they had an unfettered ability to appeal, and the absence of a second, written notice of the decision could not possibly impact that ability.

Because the absence of a written decision could not have interfered with the plaintiffs' ability to timely appeal, the defendants are entitled to summary judgment with respect to the plaintiffs' claim for discriminatory interference with their appeal.

### IV. Declaratory Judgment.

Against the City and the Board only, the plaintiffs seek both a declaration that they are entitled to a permit and an order compelling the defendants to issue one. (Doc. 34 at 10-11). The defendants assume that this claim depends on the existence of race discrimination, interference with the plaintiffs' appeal, or both, but nothing in the amended complaint so limits it. For all that appears, the plaintiffs assert that the decision was substantively or procedurally unsustainable, regardless of any discrimination or interference. Thus, the success of the defendants' motion for summary judgment as to the other claims does not of itself compel a like result here.

The defendants note that declaratory relief is discretionary, and they assert that the Court should not entertain the declaratory judgment claim because there is a "sufficient

state law remedy," which "is the more appropriate relief than deciding the state law issue in a declaratory judgment action." (Doc. 80 at 32).[12]

"The Declaratory Judgments Act is an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant." *Ameritas Variable Life Insurance Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (internal quotes omitted). "It only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." *Id*. The problem for the defendants is that they have not identified or addressed the considerations articulated by the Supreme Court and the Eleventh Circuit as guiding a trial court's decision whether to exercise that discretion, and the Court will not perform this work on the defendants' behalf.

The defendants argue that the plaintiffs have "waive[d]" their declaratory judgment claim by not responding to the defendants' argument. (Doc. 107 at 2). Because Federal Rule of Civil Procedure 56(a) specifies that summary judgment may be entered only when the record evidence shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law, "the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of the motion." *United States v. One Piece of Real Property*, 363 F.3d 1099, 1101 (11th Cir. 2004). The quoted statement constitutes a holding. *Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008). This rule does not allow a district court to enter summary judgment in favor of the defendants merely because the plaintiffs have not addressed the claim in opposition to motion for summary judgment.

By virtue of this order and previous ones, the Court has dismissed all claims in this lawsuit except this one for declaratory relief, which no longer implicates race

---

[12] Presumably because the race discrimination aspect of this claim was still pending when they filed for summary judgment, the defendants do not characterize the state judge's ruling as res judicata of the plaintiffs' entitlement to a permit.

[15]

discrimination. There are thus no remaining claims over which the Court has original jurisdiction.[13] The Court's only jurisdiction over this rump declaratory judgment claim is supplemental. "The district courts may decline to exercise supplemental jurisdiction … if … the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). This language invests the Court with discretion to exercise, or not to exercise, supplemental jurisdiction. *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006).

There are thus three probable bases for dismissal of the plaintiffs' rump declaratory judgment claim, but none has been developed sufficiently to allow a present ruling. The Court establishes herein a briefing schedule to permit the parties an opportunity to address these points.

## CONCLUSION

For the reasons set forth above, the defendants' motion for summary judgment is **granted** with respect to Count One (Section 1981), Count Two (Section 1982), and Count Three (Section 1983 – Equal Protection Clause). These counts are **dismissed**. Because these are the only counts as to which they are defendants, Blackmon and Cromer are **dismissed**.

The motion for summary judgment is **granted** with respect to Count Five (declaratory judgment) to the extent the claim is based on discrimination due to race or interracial marriage. To this extent, the claim is **dismissed**.[14]

---

[13] While the plaintiffs brought this claim pursuant to the Declaratory Judgments Act, 28 U.S.C. §§ 2201-2202, invoking that statute does not of itself implicate original jurisdiction. Rather, the Act requires that the plaintiff "allege facts showing that the controversy is within the court's original jurisdiction." *Household Bank v. Group*, 320 F.3d 1249, 1253 (11th Cir. 2009). That is, there must be "an underlying ground for federal court jurisdiction." *Id.*

[14] The defendants have filed a motion to strike. (Doc. 108). Much of the motion is directed to the Mendenhalls' affidavits. As discussed in note 3, these affidavits are not considered because the plaintiffs did not reference them in their opposition, as required by Rule (Continued)

The Court withholds ruling on the motion for summary judgment with respect to the balance of Count Five. The defendants are **ordered** to file and serve, on or before **January 28, 2011**, a supplemental brief addressing whether the claim should be dismissed based on (a) res judicata; (b) discretion not to entertain a declaratory judgment claim; or (c) discretion to dismiss a claim under Section 1367(c). The plaintiffs are **ordered** to file and serve any responsive brief on or before **February 14, 2011**. The Court will take this limited portion of the motion for summary judgment under submission on February 14, 2011.

The final pretrial conference presently set for January 18, 2011 at 2:30 is reset for **April 19, 2011** at **1:30 p.m.** Trial is reset from February to May.

DONE and ORDERED this 12th day of January, 2011.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

56 and other law. The same is true of certain other exhibits made the subject of the defendants' motion. As for the remainder, the plaintiffs did not cite specific portions of the exhibits, cited them for propositions the exhibits actually do not support, and/or cited them for propositions that are irrelevant to the dispositive issues decided herein. As discussed in Part II, the motion to strike certain testimony of Rev. Stromas is **granted**. In all other respects, the motion to strike is **denied as moot**.